IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

EVELYN CARTAGENA,

Plaintiff,

vs.

Civil Action No.
1:04-CV-1081 (NAM/DEP)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

LEGAL AID SOCIETY                     PETER RACETTE, ESQ.
Plattsburgh Office
100 Court St.
P.O. Box 989
Plattsburgh, NY 12901

LEGAL AID SOCIETY                     MICHAEL J. FOSTER, ESQ.
Albany Office
55 Colvin Avenue
Albany, NY 12206

FOR DEFENDANT:

HON. GLENN T. SUDDABY                 WILLIAM H. PEASE, ESQ.
United States Attorney for the        Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL          BARBARA L. SPIVAK, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                        SHEENA V. BARR, ESQ.
                                          Assistant Regional Counsel
DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Evelyn Cartagena, who suffers from both musculoskeletal and mental impairments largely attributable to a 1995 automobile accident, has commenced this proceeding to challenge the denial of her application for Supplemental Security Income ("SSI") Social Security benefits.  In support of that challenge plaintiff accepts the findings of the Administrative Law Judge ("ALJ") who heard and determined the matter, to the extent that they address her physical capabilities, but asserts that the limitations found by the ALJ to stem from her mental impairments are vastly understated.  Plaintiff argues that testimony elicited from a vocational expert reveals that had the ALJ properly assessed the extent of the limitations resulting from her mental condition he would have concluded that there are no jobs available in the national economy which she is capable of performing, and thus that she is disabled and entitled to receive SSI benefits.

-2-

Having carefully reviewed the record now before the court in light of plaintiff's arguments, I find that the ALJ's assessment of plaintiff's physical and mental limitations is supported by substantial evidence in the record, and that the Commissioner's finding of no disability resulted from the application of proper legal principles.

I.   BACKGROUND

_____Plaintiff was born on September 14, 1959; at the time of the most recent, supplemental hearing conducted in this matter, she was forty-two years of age.  Administrative Transcript at pp. 75, 150.[1]  Plaintiff is married, and since September of 1996 has lived in an apartment with her husband and three of her children, ages twelve, thirteen and fourteen.  AT 76, 151.

Plaintiff was born in Buffalo, New York, but moved to Puerto Rico at the age of five.  AT 258.  There, plaintiff graduated from high school and attended two years of school at the University of Catholica Puerto Rico.  AT 59, 258.  While in Puerto Rico, plaintiff worked during the early 1980s as a secretary in a furniture store.  AT 60-61.  Plaintiff has resided in New York State since approximately 1983 or 1984, initially in Buffalo, and more

---

[1]      Portions of the Administrative Transcript, Dkt. No. 8, and Supplemental Transcript, Dkt. No. 14, of proceedings and evidence before the agency filed by the Commissioner in this action will be cited as "AT ___."

recently in Schenectady.  AT 60, 151.  Plaintiff does not speak fluent

English, nor is she able to read and write English to any significant

degree.  AT 59-60, 259.

Plaintiff last worked in 1986, operating a sewing machine in a coat

factory located in Buffalo, New York.  AT 60, 77-78.  In that position,

plaintiff was required to retrieve material, including shoulder pads, in

boxes weighing between twenty and twenty-five pounds, and to sew them

from a sitting position.  AT 78-79.  Plaintiff left that position to have

children and attend to her family responsibilities.  AT 78.

Plaintiff was involved in a motor vehicle accident in September of

1995.  AT 64.  As a result of that event, plaintiff has experienced ongoing

pain and weakness in her right side, including severe pains in her lower

and upper right back.  AT 63-64.  In addition, plaintiff suffers from ongoing

headaches, initially occurring on a daily basis, but more recently subsiding

to three to four times per week.  AT 63, 79, 81.

Plaintiff has seen several health care providers for her physical

injuries, including principally Dr. Lily Kam, an internist.  AT 62.

Medications prescribed for her physical conditions, which have been

diagnosed as chronic headache syndrome, degenerative disc disease,

-4-

and fibromyalgia, AT 291, have included Motrin and Fiorecet.  AT 63, 80, 81.  While plaintiff has in the past undergone physical therapy and treatment from a chiropractor, those treatment regimens were discontinued based upon her inability to pay.  AT 80-81.  Plaintiff has not undergone any surgical intervention as a result of her injuries.  AT 79.

Plaintiff's physical limitations have led her to experience mental difficulties.  Plaintiff has been treated for her mental condition by both Dr. Kam and Reinaldo Cardona, a Certified Social Worker ("CSW").  *E.g.*, AT 237, 240, 258-60, 430-31, 487.  Plaintiff's mental condition has been variously diagnosed as depression, post traumatic stress disorder, and anxiety disorder, AT 63, 65, 81-83, and has been treated in the past with Zoloft and Prozac, and more recently Paxil, AT 63, 66.  Plaintiff does not report experiencing any adverse side affects from either those drugs or the medications taken for her physical impairments.  AT 65.

Plaintiff has a driver's license, and is able to drive between three and four times per week.  AT 76.  Plaintiff is also capable, with some assistance from her children, of performing housework, cooking, washing dishes, doing laundry, grocery shopping, and caring for her personal needs.  AT 66-67, 83.  Plaintiff is not, however, able to mop or vacuum

due to her inability to push and pull.  AT 83, 86.  Plaintiff also attends church two to four times weekly, and is able to go out with her husband once a week and to attend her children's school functions.  AT 69, 84-85.

II.    PROCEDURAL HISTORY

      A.    Proceedings Before the Agency

On November 26, 1996 plaintiff filed an application for SSI benefits with the agency, alleging a disability onset date of September 7, 1995 – the date of her motor vehicle accident.  AT 150-54.  That application was denied, both initially and on reconsideration.  AT 101-04, 107-10.

At plaintiff's request, a hearing was conducted on June 26, 1998 before ALJ Carl E. Stephan to address her claim for benefits.  AT 54-70. Following that hearing ALJ Stephan issued a decision, dated September 11, 1998, finding that plaintiff was not disabled at the relevant times, and thus upholding the denial of benefits.  AT 39-53.  On October 27, 2000, plaintiff's request for a review of that determination was granted by the Social Security Administration Appeals Council, which vacated the ALJ's decision and remanded the matter for further consideration.  AT 138-39. In its decision, the Appeals Council directed the ALJ to make specific findings regarding plaintiff's residual functional capacity ("RFC"), and to

compare those findings with the demands of plaintiff's past relevant work. *Id.* The Appeals Council also directed the ALJ to consider an application subsequently filed by plaintiff on May 16, 2000, also seeking SSI benefits. *Id.*

_____On March 13, 2001 ALJ Stephan conducted a supplemental hearing to address plaintiff's initial claim for benefits, in light of the Appeal Council's ruling, as well as the newly filed application, which was consolidated with the prior application. AT 29, 71-98. On April 25, 2001 ALJ Stephan issued a second opinion, again concluding that plaintiff was not disabled at the relevant times, and thus is ineligible for receipt of SSI benefits. AT 29-37.

In his decision, ALJ Stephan analyzed the evidence presented at the two hearings, including testimony elicited from an impartial vocational expert, utilizing as a framework the now familiar five-part disability test. After concluding at step one that plaintiff has not engaged in substantial gainful activity since her alleged onset date, AT 30, the ALJ next analyzed the relevant medical evidence in the record and, while concluding that plaintiff suffers from severe musculoskeletal and mental impairments of sufficient severity to preclude her ability to perform basic work activities,

found that they did not meet or equal any of the presumptively disabling impairments listed in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P., App. 1.  AT 32.

Based upon his review of the evidence in the record, including several RFC assessments, ALJ Stephan next concluded that claimant retains the ability "to perform light work requiring only occasional climbing, stooping, bending, crouching and crawling as well as a mildly limted [sic] ability to tolerate work stresses, concentrate, execute detailed instructions, relate to co-workers and deal with the public."  AT 32.  ALJ Stephan went on to find, however, that while plaintiff suffers from a variously diagnosed mental condition, she retains the ability to understand and carry out simple instructions, and to interact and function appropriately in a workplace setting.  AT 33.  Based upon hypothetical questions posed to a vocational expert, utilizing his findings, ALJ Stephan concluded at step four of the relevant inquiry that plaintiff is capable of performing her past relevant work as a sewing machine operator, and thus found unnecessary to proceed to step five, where the burden of proof would shift to the Commissioner to establish the existence of jobs in the

national economy which plaintiff is capable of performing.[2]  AT 32-33, 36.

In arriving at his RFC assessment the ALJ rejected, at least in part,

contrary opinions of plaintiff's treating physician, Dr. Kam, as both

inconsistent with her clinical notes as well as the findings of other

physicians, and because they relate to plaintiff's mental condition which

Dr. Kam, as an internist rather than a psychiatrist, is not qualified to

assess.  AT 33-34.  ALJ Stephan also rejected plaintiff's subjective

complaints regarding limitations on her ability to work,  as being

inconsistent with both medical evidence in the record and the extent of her

---

[2]      In his first hypothetical, the ALJ described plaintiff's limitations as follows:

> They have mild limitations in their ability to relate to co-workers, deal with the public, and interact with supervisors.  Similarly, they have mild limitations in their ability to deal with work stresses and maintain attention and concentration.  And while this individual can understand, remember, and carry out simple instructions, they have mild limitations in their ability to carry out, understand, and remember detailed instructions.

AT 95.  The second hypothetical assumed the same mental capabilities, with additional physical limitations.  AT 96.  The vocational expert testified that the person described in these two hypotheticals could perform plaintiff's past relevant work.  AT 95-96.  The third hypothetical question posed to the vocational expert changed the psychological landscape to assume that instead of being only mildly limited in the psychological areas mentioned, she should be regarded as moderately limited in all of those areas.  AT 97.  In response to this hypothetical with its enhanced psychological limitations, the expert opined that the person described would not be able to return to plaintiff's past relevant work.  *Id.*

daily activities.  AT 34-36.  ALJ Stephan's decision became a final determination of the agency when, on May 12, 2004, the Appeals Council finally denied plaintiff's request for review.[3]  AT 7-9.

> B. <u>This Action</u>

Plaintiff commenced this action on September 16, 2004.[4]  Dkt. No. 1.  Issue was thereafter joined by the Commissioner's filing on April 1, 2005 of an answer, accompanied by an administrative transcript of the proceedings and evidence before the agency, AT 7, 8, which was later augmented by the filing of a supplemental administrative transcript on October 17, 2005, Dkt. No. 14.  With the filing on January 3, 2006 of plaintiff's brief, Dkt. No. 17, and that on behalf of the Commissioner on February 13, 2006, Dkt. No. 18, this matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

---

[3]     The Social Security Appeals Council had earlier denied requests by plaintiff for review of ALJ Stephan's decision on March 21, 2003, and again in September 11, 2003.  AT 7.  Those denials were set aside, however, apparently based upon a series of miscommunications between plaintiff and her representative on the one hand, and the agency on the other.  AT 5-7.

[4]     The Appeals Council issued a notice on August 19, 2004 extending plaintiff's time to file a civil action seeking judicial review until thirty days following receipt of that letter.  AT 3.

District of New York Local Rule 72.3(d).[5]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Scope Of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been

---

[5]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by then-Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v.*

*NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone,* 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dept. of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. U.S. R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

B.     Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.] "  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then

-14-

the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

C.      Evidence In This Case

In her appeal, plaintiff does not challenge the physical characteristics associated with the ALJ's RFC finding.  The focus of plaintiff's arguments is instead upon his analysis of her mental impairment which has been variously diagnosed, and which apparently traces its roots to plaintiff's motor vehicle accident and the resulting, residual physical effects.  Analyzing the medical evidence before him, the ALJ in essence concluded that the plaintiff is only moderately limited by her mental condition in her ability to succeed in a work environment.  In reaching that conclusion, the ALJ rejected somewhat contrary opinions of plaintiff's treating internist, Dr. Kam, and of her treating clinical social worker, Mr. Cardona.

1.      Evaluation of Plaintiff's Mental Condition

When there is evidence of a mental impairment that allegedly

-16-

prevents a claimant from working, the Commissioner must follow a special procedure at each level of administrative review.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  The Commissioner must first record the pertinent signs, symptoms, findings, functional limitations, and effects of treatments contained in the record.  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If a mental impairment is determined to exist, the Commissioner must next indicate whether certain medical findings which have been found especially relevant to the ability to work are present or absent.  *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2).  In doing so the Commissioner rates the degree of functional loss resulting from the impairment – on a scale ranging from no limitation to severe limitation, the latter of which is incompatible with the ability to do work-like functions – analyzing four specific factors, including 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).

The Commissioner must then determine the severity of the mental impairment.  *Id.* §§ 404.1520a(d), 416.920a(d).  Where the Commissioner rates the degree of limitation in the first three functional areas as "none" or

"mild", and "none" in the fourth functional area, the Commissioner will generally conclude that claimant's impairment is not severe, unless the evidence indicates otherwise.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If, on the other hand, the Commissioner finds the claimant's medical impairment to be severe, she must determine whether it meets or equals a listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  In the event the impairment is deemed severe, but does not meet or equal a listed mental disorder, the Commissioner next analyzes the claimant's RFC, considering whether he or she is limited in the ability to carry out certain mental activities – such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting – to such a degree as to reduce his or her ability to do past relevant work and other work.  *See* 20 C.F.R. §§ 404.1520a(d)(3), 404.1545(c), 416.920a(d)(3), 416.945(c).

An ALJ is no longer required under the governing regulations to append a Psychiatric Review Technique Form ("PRTF") to his or her decision when addressing a case when a psychological impairment is implicated.  65 Fed. Reg. 50746-01 (Aug. 21, 2000), *available at* 2000 WL

1173632, at *50758.  The ALJ is, however, nonetheless subject to the requirement that an analysis of whether a mental impairment exists be incorporated or in some way embodied within his or her decision when evidence of such an impairment is presented.  20 C.F.R. §§ 404.1520a.

To trigger these requirements a claimant bears the initial responsibility of providing medical evidence sufficient to indicate the potential existence of a mental impairment.  *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991) (citing 20 C.F.R. §§ 404.1508, 404.1514).  In this case there are references in some of plaintiff's medical records, including from Dr. Kam and her treating CSW, reflecting the existence of at least some degree of mental impairment.  *See*, *e.g.*, AT 237, 240, 430-31, 487; *see also* AT 258-60.  Since this initial requirement is satisfied, it was incumbent upon the ALJ to make an analysis of the effects of that mental impairment upon the various areas referenced in the pertinent regulations.

ALJ Stephan appears in his decision to have concluded that plaintiff's mental condition was of sufficient severity to qualify, at step two of the relevant analysis, as an impairment of concern, but concluded that it did not meet or equal any of the listed, presumptively disabling conditions set forth in the regulations.  AT 32.  Plaintiff does not appear to

-19-

challenge this portion of the ALJ's determination.

After reviewing the record and determining the extent of any limitations associated with plaintiff's physical conditions, the ALJ next turned to consider what, if any, impact plaintiff's mental condition would have upon her ability to perform work related activities. AT 32-33. The ALJ concluded that plaintiff "was capable of interacting appropriately with the public, asking simple questions, getting along with co-workers, maintaining socially appropriate behavior and responding appropriately to changes in a work setting[.]" AT 33. ALJ Stephan noted that this conclusion was supported by psychiatric and organicity evaluations conducted by Annette Payne, Ph.D., in June of 2000. *See* AT 33, 433-440. While it is true that Dr. Payne observed that claimant will have some difficulty in dealing with stress in a competitive work place, she also opined that plaintiff was capable of making appropriate job decisions. AT 435. The ALJ thus concluded, in reliance upon testimony from a vocational expert, that the claimant retained the ability to perform her past relevant work. AT 33.

Although the record discloses mixed findings regarding the extent of plaintiff's mental limitations, the ALJ's RFC finding garners much support

from the record.  It is true, as plaintiff has argued, that in 1997 her mental

impairments appeared to have had more than merely a mild impact upon

her abilities to function in certain critical areas.  In January of 1997,

plaintiff underwent a psychiatric evaluation by Dr. John Seltenreich.  AT

258-60.  Based upon his examination, Dr. Seltenreich diagnosed plaintiff

as suffering from major depression and assigned a global assessment of

functioning ("GAF") score of fifty-five.[6]  Plaintiff thereafter began treating

with CSW Cardona who, in June of 2000, reported improvement in

plaintiff's mental state.  AT 430-31.  In a response completed by CSW

Cardona to a questionnaire presented by plaintiff's counsel, that treatment

provider indicated that plaintiff is able to understand simple, short

instructions and to carry out those instructions.  AT 463.  That report also

reflects plaintiff's  ability to sustain an ordinary routine without special

supervision, and to make simple, work-related decisions.  *Id.*  CSW

Cardona further opined that plaintiff retains the abilities to interact

appropriately with the general public and with co-workers.  AT 463-64.

---

[6]     The Global Assessment of Functioning ("GAF") scale considers
psychological, social, and occupational functioning on a hypothetical continuum of
mental health.  Diagnostic and Statistical Manual of Mental Disorders 34 (American
Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR").  A GAF score of
between 50 and 60 indicates the existence of moderate mental health symptoms or
moderate difficulties in social, occupational or school functioning.  *Id.*

As was previously noted, the ALJ's RFC determination also finds

support in a psychiatric evaluation conducted by Annette Payne, Ph.D. on

June 6, 2000.  AT 433-36.  As a result of her evaluation Dr. Payne

diagnosed plaintiff as suffering from an adjustment disorder with mixed

anxiety and depressed mood, and noted that she is capable of performing

simple tasks, and of learning new ones.  *Id.*  Dr. Payne did note that

plaintiff would have difficulty in dealing with the stress of a competitive

work place, but found that she is capable of making appropriate job

decisions and could benefit from vocational counseling to identify jobs

capable of being performed by her.  *Id.*  The evaluation of an independent

consultant like Dr. Payne, despite constituting a non-treating source, can

provide substantial evidence for an ALJ's determination.  *Barringer v.*

*Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.).

The ALJ's RFC finding also draws support from progress notes of

Schenectady Family Health Services.  In February of 2000, for example,

health care providers at that facility observed that plaintiff's depression

had lessened.  AT 450.  A report of a later visit on May 26, 2000 also

reflects improvement in plaintiff's depression.  AT 449.

In sum, although the evidence is somewhat equivocal regarding this

issue, the ALJ's finding that the limitations associated with plaintiff's mental impairment are only mildly limiting in the relevant areas pertaining to the ability to perform her past relevant work is supported by substantial evidence in the record.

### 2.   Treating Sources

In arriving at his RFC finding, ALJ Stephan rejected certain arguably conflicting opinions of Dr. Kam and CSW Cardona, related to plaintiff's mental capabilities.  *See* AT 33-34.  Plaintiff contends that those rejections were neither warranted nor properly explained.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.[7]  *Veino*, 312 F.3d at 588;

---

[7]      The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors]

*Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling, however, if contrary to other substantial evidence in the record.  *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  Id.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  See *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her

---

in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

opinions.  *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

Unquestionably, Dr. Kam has been treating the plaintiff over a significant period of time, albeit not with marked frequency.  Dr. Kam, who works with the Schenectady Family Health Services, Inc., issued a statement, dated February 14, 2001, in which she noted that Ms. Cartagena "is under [her] care for post-traumatic stress disorder with resultant anxiety disorder and depression" and states that she is "severely disabled by this condition" and "is incapable of working now or in the near future."  AT 487.  To the extent that this statement purports to opine on the issue of disability or plaintiff's inability to work in any job, it was properly discounted by the ALJ as addressing an issue specifically reserved to the Commissioner.  20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Dr. Kam's letter dated August 26, 1997, in which she expresses her view that Ms. Cartagena's current problems present substantial limitations in her ability to work, is accompanied by a questionnaire requesting specific findings.  AT 291-300.  In her response to that questionnaire Dr. Kam, while finding no limitations falling in the "severe" category, notes several workplace considerations deemed to be "moderately severe"

including in carrying out instructions; performing complex, repetitive and varied tasks; dealing with changes in routines; appropriately responding to supervision and customary work pressures; and meeting production, quality and attendance standards.  AT 298.

The ALJ rejected Dr. Kam's opinions, in part based upon the fact that she was plaintiff's internist and not her treating psychiatrist.  AT 33. ALJ Stephan also observed that despite her findings, Dr. Kam did not provide the plaintiff with any counseling.[8]  AT 33.  Moreover, plaintiff's claims of serious ongoing mental difficulties is somewhat undermined by treatment notes from the Schenectady Family Health Center, including from February of 2000 and May of 2000, both of which appear to reflect improvement in her depression.  AT 449-50.

As the ALJ noted, Dr. Kam's conclusions are also inconsistent with other statements in the record, including consultative reports of Dr. Payne as well as certain of the opinions rendered by CSW Cardona.  Based upon the foregoing, I find that the ALJ's rejection of Dr. Kam's statement was both properly explained, and is supported by substantial evidence.

---

[8]     I note that Dr. Kam's statement of February 14, 2001 indicates her opinion that the plaintiff is in need of "ongoing psychiatric therapy that she cannot afford[.]"  AT 487.

Plaintiff also maintains that the opinions of her clinical psychologist, Reinaldo Cardona, CSW-R, were improperly rejected by the ALJ. Although information from sources such as social workers may be considered by an ALJ to assist in understanding a claimant's limitations, such reports are not considered by regulation as treating source opinions otherwise entitled to controlling weight.  20 C.F.R. § 416.913(e); *see White v. Commissioner of Social Security*, 302 F.Supp.2d 170, 176 (W.D.N.Y. 2004).  In any event CSW Cardona's reports, particularly from the later years, are themselves conflicting, with some revealing considerable improvement in certain areas.  *See*, *e.g.*, AT 430-31. Moreover, as the ALJ noted, *see* AT 34, many of CSW Cardona's specific findings regarding limitations are supportive of the hypothetical question posed by ALJ Stephan to the vocational expert, leading to the finding of no disability.  The ALJ was therefore entitled, as he did, to reject the more conclusory findings of CSW Cardona regarding plaintiff's ability to work, in favor of his more detailed findings many of which are entirely consistent with the ultimate conclusion of no disability.

IV.   SUMMARY AND RECOMMENDATION

Plaintiff, who undeniably suffers from lingering psychological effects

of a 1995 motor vehicle accident and the physical injuries suffered, nonetheless has shown vast improvement in her mental condition, particularly from 1997 to 2000.  At the time of the ALJ's determination of no disability, plaintiff was only mildly limited, as a result of her mental impairments, in certain areas of functioning relevant to work place activities.  The ALJ's findings regarding those limitations are amply supported by substantial evidence, and do not result from improper rejection of the findings of either plaintiff's treating internist, Dr. Kam, or her therapist, CSW Cardona.  The resulting finding of no disability is amply supported by testimony by a vocational expert to the effect that despite her limitations, she retains the capacity to perform past relevant work as a sewing machine operator.  This determination is fully consistent with evidence in the record, as well as evidence of plaintiff's daily activities.

Based upon the foregoing it is therefore

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination on no disability AFFIRMED, and plaintiff's complaint in this action DISMISSED in its entirety.

-28-

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties by regular mail.

David E. Peebles
U.S. Magistrate Judge

Dated:      September 18, 2006
            Syracuse, NY

G:\socialsecurity\cartagena.wpd